IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

AIX SPECIALTY INSURANCE COMPANY                                               PLAINTIFF

v.                                       Case No. 1:23-cv-1094

KENNETH SHELTON, Individually and
d/b/a Seicorp Corporation                                                     DEFENDANT

**ORDER**

Before the Court is a Motion for Summary Judgment filed by Plaintiff AIX Specialty Insurance Company ("AIX"). ECF No. 23. Defendant Kenneth Shelton ("Shelton") has responded. ECF No. 26. AIX has replied. ECF No. 27. The Court finds the matter ripe for consideration.

**I. BACKGROUND**

This matter arises out of a separate state court action against Shelton (the "underlying action"). On April 20, 2022, Yvonne Allision and Gwen Robinson (the "underlying plaintiffs") filed a complaint (the "underlying complaint") against Shelton, AIX, and Golden State Claims Adjusters ("GSCA") in the Bradley County, Arkansas Circuit Court. ECF No. 2-1. The underlying plaintiffs alleged that they contracted with Shelton in June 2020 for repairs and remodeling of their home in Warren, Arkansas. They further alleged that Shelton performed incomplete and defective work. They assert that "the home was gutted, the roof removed, and other work to the plumbing, floors, and entire home left the home completely uninhabitable since July 2020 when he began work." *Id*. at p. 3-4. This allegedly resulted in significant water damage to the home's structure and foundation. The underlying plaintiffs allege that they reached out to Shelton via phone and written notice to correct the work, but that he failed to engage in any correction.

The underlying plaintiffs brought claims for breach of contract and breach of warranty of sound workmanship against Shelton for the unfinished construction, along with a claim of fraud for misrepresenting his credentials and background as a construction contractor. They also brought a claim of outrage against Shelton, AIX, and GSCA for failing to investigate a claim they submitted against Shelton's insurance policy. The outrage claim centers on a commercial general liability insurance policy (the "Policy") Shelton obtained from AIX during this time. ECF No. 2-2. The Policy provided its coverage for a period beginning April 13, 2021, and ending April 13, 2022. *Id*. at p. 4. The underlying plaintiffs eventually dismissed AIX from the underlying action. ECF No. 17, p. 1. On September 27, 2023, the underlying plaintiffs obtained a default judgment against Shelton in the amount of $191,504.47. *Id*. at p. 1 n.1.

On October 3, 2023, AIX filed its Complaint against Shelton in this Court seeking a declaratory judgment pursuant to 28 U.S.C. § 2201[1] and asserting subject matter jurisdiction pursuant to 28 U.S.C. § 1332.[2] ECF No. 2. AIX seeks a ruling declaring that the Policy created neither a duty to defend Shelton in the underlying action nor any coverage for the claims alleged against Shelton in the underlying action. Shelton, proceeding pro se, eventually filed his Answer. ECF No. 12. On June 13, 2024, AIX filed the instant motion seeking summary judgment regarding its asserted interpretations of the Policy, along with its brief in support and statement of undisputed material facts. ECF Nos. 23, 24, & 25. Shelton filed an untimely pro se response[3] in opposition, to which AIX filed a reply. ECF Nos. 26 & 27.

---

[1] "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201.

[2] The Court is satisfied that it has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a). AIX asserts that the amount in controversy exceeds $75,000 and because AIX and Shelton are citizens of Delaware and Arkansas, respectively.

[3] Shelton did not file a statement of disputed material facts with his response, which violates Local Rule 56.1(b). Thus, AIX's statement of facts are deemed admitted. *See* Local Rule 56.1(b). However, that failure has little, if any, impact

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is a "threshold inquiry of . . . whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they reasonably may be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment should be granted only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Erickson v. Nationstar Mortg., LLC*, 31 F.4th 1044, 1047-48 (8th Cir. 2022) (citation omitted). "A fact is 'material' if it may 'affect the outcome of the suit.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "The movant 'bears the initial responsibility of informing the district court of the basis for its motion,' and must identify 'those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The party opposing summary judgment cannot rest on mere assertions or denials, but "must respond by submitting evidentiary materials that set out 'specific facts showing that there is a genuine issue for trial.'" *Id.* (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Banks v. Deere*, 829 F.3d 661, 665 (8th Cir. 2016) (citation omitted). The Court must consider all the evidence and all reasonable inferences that arise from the evidence in the light most favorable to the nonmoving party. *See Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006). It is the function of the jury, not the Court, to make credibility determinations, weigh

---

on this matter because the Court is tasked with resolving legal questions regarding the interpretation of the Policy and because AIX's statement of facts mostly quotes allegations within the underlying complaint or terms of the Policy.

evidence, and draw inferences from the facts. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

### B. Applicable Law

Federal courts sitting in diversity generally apply the substantive law of the forum state. *See Olmsted Med. Ctr. v. Cont'l Cas. Co.*, 65 F.4th 1005, 1008 (8th Cir. 2023) (citations omitted). Arkansas is the forum state. The parties cite Arkansas law to support their arguments. Accordingly, the Court will apply Arkansas law to the instant motion.

### III. DISCUSSION

### A. Duty to Defend

AIX argues that it had no duty to defend Shelton because the clear and unambiguous terms of the Policy did not create the possibility of coverage for the allegations in the underlying action. ECF No. 24, p. 7-10. AIX first emphasizes the term of the Policy limiting coverage for property damage, which states:

> This insurance applies to "bodily injury" and "property damage" only if [t]he "bodily injury" or "property damage" is caused by an "occurrence" that first takes place or begins during the "policy period". An "occurrence" is deemed to first take place or begin on the date that the conduct, act or omission, process, condition(s) or circumstance(s) alleged to be the cause of the "bodily injury" or "property damage" first began, first existed, was first committed, or was first set in motion, even though the "occurrence" causing such "bodily injury" or "property damage" may be continuous or repeated exposure to substantially the same general harm[.]

ECF No. 2-2, p. 1. AIX does the same for the Policy's definition of "occurrence", which reads: "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. 'Occurrence' as used herein refers to the earliest act, omission, or creation of conditions or circumstances that give rise to any 'property damage', 'bodily injury' or 'personal or advertising injury'". *Id.* at p. 36. AIX then contends that the underlying action alleges that all property damage arose from or originated with Shelton initiating his work in July

4

2020, which is obviously before the April 13, 2021 commencement of the Policy period. Thus, AIX concludes that the Policy language unambiguously precludes coverage for property damage related to any of the allegations in the underlying action. AIX also argues that Arkansas law holds that poor or faulty workmanship is not an "occurrence" for insurance contract purposes. ECF No. 24, p. 10-14.

In response, Shelton argues that the allegations in the underlying action created a duty for AIX to defend him. ECF No. 26, p. 1-2. Shelton emphasizes that an insurer's duty to defend is broader than the duty to pay damages. Shelton then asserts, without citation to the underlying complaint or to any evidence in the record, that no property damage occurred until May 2021 and that AIX was aware of facts supporting coverage under the Policy. Shelton also cites to *Proctor Seed & Feed Co. v. Hartford Ins. Co.*, 491 S.W.2d 62 (Ark. 1973) to contend that AIX's knowledge of facts beyond those asserted in the underlying complaint created a duty to defend. In reply, AIX notes that Shelton failed to cite any aspect of the underlying complaint that would indicate coverage under the Policy or articulate what facts AIX was aware of that made coverage possible. ECF No. 27. AIX also disputes that it ever needed to investigate the property damage because the allegations in the underlying action indicate that the Policy could not provide coverage.

Arkansas law is "well settled" regarding insurance policy construction and interpretation:

> The language in an insurance policy is to be construed in its plain, ordinary, and popular sense. If the language is unambiguous, this court will give effect to the plain language of the policy without resorting to the rules of construction. "In considering the phraseology of an insurance policy the common usage of terms should prevail when interpretation is required." On the other hand, if the language is ambiguous, this court will construe the policy liberally in favor of the insured and strictly against the insurer. Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation. Different clauses of an insurance contract must be read together and the contract construed so that all of its parts harmonize, if that is at all possible, and, giving effect to one clause to the exclusion of another on the same subject where the two are reconcilable, is error. A construction that neutralizes any provision of

> a contract should never be adopted, if the contract can be construed to give effect to all provisions.

*Phila. Indem. Ins. Co. v. Austin*, 2011 Ark. 283, at 6-7, 383 S.W.3d 815, 819-20 (internal citations and quotations omitted). "[T]he terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid." *Essex Ins. Co. v. Holder*, 372 Ark. 535, 537, 261 S.W.3d 456, 458 (Ark. 2007). In evaluating a commercial general liability policy, a court first "examine[s] the facts of the insured's claim to determine whether the policy's insuring agreement makes an initial grant of coverage. If it is clear that the policy was not intended to cover the claim asserted, the analysis ends there." *Columbia Ins. Grp. v. Cenark Project Mgmt. Servs., Inc.*, 2016 Ark. 185, at 6, 491 S.W.3d 135, 138.

"As a general rule, when determining a liability carrier's duty to defend, the pleadings against the insured determine the insurer's duty to defend." *Kobek v. Truck Ins. Exch.*, 2014 Ark. 108, at *6, 431 S.W.3d 900, 905 (citation omitted). An insurer's duty to defend is "broader" than its duty to indemnify and arises when there is a "possibility" that the alleged damage falls under the policy coverage. *Id*. "Where there is no possibility that the damage alleged in the complaint may fall within the policy coverage, there is no duty to defend." *Id*. at 6, 905-06.

The Court finds that the allegations in the underlying complaint created no duty to defend under the Policy. The Policy clearly and unambiguously states that it provides coverage for property damage only if it is caused by an "occurrence" that first takes place during the Policy's term. ECF No. 202, p. 1. The occurrence is deemed to first take place when the actions or conditions creating the property damage are first "set in motion" and includes "continuous or repeated exposure to substantially the same general harm." *Id*. Further, the Policy defines "occurrence" to be "the earliest act, omission, or creation of conditions or circumstances" that

6

result in property damage. *Id*. at p. 36. All actions alleged against Shelton that the underlying plaintiffs assert resulted in property damage occurred, began, or originated in 2020. Per the allegations, Shelton initiated his "defective" and "substandard" work in late July 2020, and from that point on he left the home "uninhabitable" and in a physical state that resulted in "significant water damage" to the home's structure. ECF No. 2-1, p. 2-6. Even Shelton's allegedly fraudulent misrepresentations regarding his qualifications began in 2020. *Id*. at p. 5. Thus, Shelton's alleged actions giving rise to property damage at the home were undoubtedly "first set in motion" prior to the April 13, 2021 onset of the Policy term. Under the plain language of the Policy, these allegations demonstrated no possibility of coverage for the property damage that resulted from those alleged actions occurring prior to the Policy period.[4] Accordingly, AIX had no duty to defend or indemnify Shelton in the underlying action.

### B. Policy Coverage Exclusions

AIX also argues that the various exclusions within the Policy preclude coverage even if the allegations in the underlying action create the initial possibility of coverage. It is unnecessary to address the exclusions related to property damage in light of the Court's finding above. AIX had no duty to defend Shelton in the underlying action for allegations related to property damage, which means that there is no coverage under the Policy. *See Kobek*, 2014 Ark. 108, at 6, 431 S.W.3d at 905-06 (noting that the duty to defend is broader that the duty to provide coverage under an insurance policy); *and see Cenark*, 2016 Ark. 185, at 6, 491 S.W.3d at 138 (noting that exclusions within a commercial general liability policy are only considered if the policy makes an

---

[4] The Court is not persuaded by Shelton's citation to *Proctor*. That court held that "there may well be situations where an insurance company's obligation to defend cannot be determined simply from the allegations in the complaint." *Proctor*, 491 S.W.2d at 64. However, Shelton has not cited any material in the record that indicates AIX was "acquainted with facts . . . not in accord with the allegations in the pleading" that would inform it of a possibility of coverage under the Policy. *Id*.

initial grant of coverage). Without coverage under the Policy for the various alleged causes of property damage, there is no impetus for examining whether the relevant coverage exclusions are applicable.

The only Policy coverage exclusions highlighted by AIX that do not involve a potential cause of property damage are those regarding punitive damages and attorney's fees. AIX contends that those exclusions clearly preclude coverage for the attorney's fees sought by the underlying plaintiffs, or any punitive damages awarded against Shelton in the underlying action. The Court agrees. First, Shelton makes no argument in opposition to the applicability of those exclusions. Also, both attorney's fees and punitive damages are clearly excluded from coverage under the Policy; there is no coverage for "punitive damages . . . of any nature", or for any attorney's fees arising from any "claim" or "suit" against an insured.[5] ECF No. 2-2, p. 25. Accordingly, the Court finds that the Policy clearly excludes coverage for any attorney's fees or punitive damages levied against Shelton in the underlying action.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Plaintiff AIX's Motion for Summary Judgment (ECF No. 23) should be and hereby is **GRANTED**. The Policy provides no coverage for the allegations in the underlying complaint and AIX owes no duty to defend or indemnify Defendant Shelton in the underlying action.

**IT IS SO ORDERED**, this 9th day of October, 2024.

                                                               /s/ Susan O. Hickey
                                                               Susan O. Hickey
                                                               Chief United States District Judge

---

[5] More granularly, the exclusions for punitive damages and attorney's fees are found within §§ II.q and II.r of the Policy, respectively. ECF No. 2-2, p. 25.